NEEDHAM A. CRAMER *v.* JASON B. F. SIDES.

[39 South. Rep., 693.]

CHOCTAW COUNTY.    *Tax sales.    Laws* 1896, *ch.* 124, *sec.* 3, *p.* 129.    *Districts.    Place of sale.*

    Under Laws 1896, ch. 124, p. 129, dividing Choctaw county into two districts for court purposes, and sec. 3 thereof, providing that in making sales of lands, "under execution or otherwise in the discharge of any of his official duties," the sheriff shall sell the same at the door of the courthouse of the district in which the lands lie, the sheriff, as tax collector, is without power to sell for taxes at the courthouse of one district lands lying in the other district.

FROM the chancery court of, second district, Choctaw county. HON. JAMES F. McCOOL, Chancellor.

Cramer, the appellant, was complainant, and Sides, the appellee, was defendant in the court below.    The bill sought the confirmation of a tax title.

Complainant alleged that on the first Monday in March, 1901, he bought at tax sale for the taxes of the year 1900 certain land situated in the second district of Choctaw county; that said land was sold at the courthouse in the first district of said county; and that the tax collector's deed conveying the same was filed in the chancery clerk's office in the first district of said county,

where it remained for two years, as required by law, and, not being redeemed within that time, was delivered to complainant. To this bill the defendant demurred on the ground that the tax sale and tax collector's deed were void, for the reason that the land is situated in the second district of the county, while the sale was made in the first district and the tax deed was recorded in the first district. The court below sustained the demurrer and dismissed the bill, and complainant appealed to the supreme court.

*Daniel & Adams,* for appellant.

The sale was made at the proper place. Prior to the act of the legislature of 1906 dividing the county of Choctaw into two circuit and chancery districts, the county had only one county seat, Chester, which under said act is the county seat of the first judicial district of the county, and still the county seat of the whole county for the transaction of all business of the county, except as otherwise provided by said act. The primary object of the act was, "for the purpose of holding annually two circuit courts and two chancery courts in Choctaw county," the other provisions of the act being merely incidents to the primary object thereof, that of holding the courts. Only such things can be done at Ackerman, the county seat of the second district, as are expressly provided for in the act, or incident to the express provisions thereof. The duties of the various officers of the county as pertaining to the second district are mentioned in said act; but nowhere in said act is there any provision requiring the sheriff as tax collector to make tax sales at Ackerman, the county seat of the second district. Acts 1896, ch. 124, p. 128; *Wheeler v. Ligon,* 62 Miss., 560; *Deaton v. Burchart et al.,* 59 Miss., 144.

Under Code 1892, §§ 3811, 3813, which requires the tax collector to sell all land on which taxes remain unpaid at the door of the courthouse of his county on the first Monday of March

in each year, the sale was rightly made at Chester, since the act dividing the county does not expressly provide otherwise.

It is contended that this section requires that land, sold for taxes, lying in the first district shall be sold at Chester, and that lands lying in the second district shall be sold at Ackerman, and that sales of land for taxes are included in the word "otherwise," in the eleventh line of said sec. 3, between the words "or" and "in." This contention is unwarranted, because the word "otherwise" when construed in the light of the context, according to the rule of *ejusdem generis,* undoubtedly means sales of like nature as those under execution, such as attachment, *vendi exponas,* etc. The whole section has reference to the sheriff's duties as sheriff, and not as tax collector. The duties specified in said section are those to be performed by the sheriff in obedience to the commands of the courts, and such other things as pertain to his office as sheriff, and not as tax collector.

*Hughston & Seawright,* for appellee.

The tax deed is void because the sale was not made at the place provided by law—that is to say, at Ackerman, the county seat of the second district, wherein the land is situated. Section 3 of the act dividing Choctaw county into two districts (Laws 1896, p. 129) evidently makes it mandatory upon the sheriff, in the discharge of any of his official duties, to make all kinds of sales of land situated in the second district at the courthouse door of the said second district. The language used in that section is as broad and comprehensive as could be employed to express that duty. The section referred to says, in part, "In making sales of land under execution or *otherwise* in the discharge of *any* of his official duties, such lands as lie in the first district," etc. One of the official duties imposed by law on the sheriff is that he shall be the tax collector of the county and shall sell such lands as are delinquent for taxes. The sheriff, as tax collector, was therefore in the discharge of one of his official

duties when the land in question was sold for taxes, and should have made the sale at the county seat of the district wherein the land was situated.

Sheriff implies tax collector. *Byrne et al.* v. *State,* 50 Miss., 688; *French* v. *State,* 52 Miss., 759; Code 1892, § 4143.

"The *ejusdem generis* rule of construction can be used only as an aid in determining the legislative intent, and not for the purpose of controlling the intention or of confining the operation of a statute within narrower limits than were intended by the lawmaker." Black on Interpretation of Laws, 143 and note.

WHITFIELD, C. J., delivered the opinion of the court.

Laws 1896, ch. 124, sec. 3, p. 129, provides as follows: "Section 3. The sheriff of Choctaw county shall be the proper officer to execute all process required by law to be executed by the sheriff, and to return the same to such district of the county as the same may belong. He shall keep an office at Chester and one at Ackerman, and in each of said offices he shall keep all the books, records, and documents required by law to be kept by sheriffs in any county in this state, the same as if said two districts were separate counties. In making sales of land under execution or otherwise in the discharge of any of his official duties, such lands as lie in the first district he shall sell at the door of the courthouse at Chester, and in making like sales of lands lying in the second district he shall sell the same at the door of the courthouse in Ackerman. Sales of personalty made by the sheriff under like authority shall be made at whichever of said places shall be more convenient, or at such other place in the county as the law shall direct." We think it is perfectly clear under this section that all sales of lands—execution sales, tax sales, or sales "otherwise," to use the very language of the act—were required to be made in that district in which the lands to be sold lie. The contention that the act referred alone to sales of lands made by the sheriff as sheriff, and not as tax collect-

or, is too technical.    The express language of the section is, "In making sales of lands under  execution or otherwise in the discharge of any of his official duties."    These words embrace all sales made by him in discharge of any of his official duties, whether as tax collector or sheriff.

*This was the view of the court below, and the judgment is affirmed.*